UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
JAN 7 2022
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

AMANDA CULLEN,

    Plaintiff,

v.                                       Civil Action No. 2:21-cv-00047

HALL AUTOMOTIVE, LLC,

    Defendant.

## REPORT & RECOMMENDATION

In this employment dispute, Defendant Hall Automotive, LLC ("Hall" or "Defendant") renews its motion to compel arbitration under terms of an arbitration agreement ("the Arbitration Agreement") that squarely encompasses the pending claims. (ECF No. 25). Plaintiff Amanda Cullen ("Cullen" or "Plaintiff") opposes the motion, arguing she did not agree to arbitrate because the Arbitration Agreement did not identify her employer, and because she has no memory of having electronically signed it. Pl.'s Mem. Opp. Def.'s Mot. ("Pl.'s Opp'n") (ECF No. 27, at 9-10); Pl.'s Sur Reply (ECF No. 32, at 1). After reviewing the facts produced during further discovery on these issues, I find that Cullen did agree to arbitrate claims against her employer and RECOMMEND the district court GRANT Defendant's Second Motion to Compel Arbitration and Stay Proceedings.

### I.    PROCEDURAL HISTORY

Plaintiff filed suit against Defendant, her former employer, on January 22, 2021, under the Family Medical Leave Act ("FMLA"). Compl. ¶¶ 56-71 (ECF No. 1, at 9-10). Defendant contends Cullen and Hall were both parties to the Arbitration Agreement, and that any disputes arising under the FMLA must be resolved through its dispute resolution procedures. Def.'s Mem.

Supp. Second Mot. Compel Arbitration ("Def.'s Mem.") (ECF No. 26, at 8). This Motion is Hall's second motion to compel arbitration in accordance with the Arbitration Agreement. (ECF Nos. 10, 25).

### A. First Motion to Compel Arbitration

Hall previously moved to compel arbitration on June 3, 2021. (ECF 10). United States Magistrate Judge Robert J. Krask denied the motion without prejudice, finding that there were "genuine issues of material fact with respect to whether a valid agreement binding the parties to arbitrate the current dispute was formed." (ECF No. 19, at 1). Parties were permitted to "conduct limited discovery" on this issue, (ECF No. 20, at 1), and the discovery deadline was later extended, (ECF No. 24, at 1).

### B. Plaintiff's Late Responses to Defendant's Discovery Requests

On August 6, 2021, Hall served discovery requests on Plaintiff. Def.'s Second Disc. Reqs. ("Def.'s Reqs.") (ECF No. 26-1, at 1-7). Among other facts, Defendant requested Plaintiff's admission that she electronically signed the Arbitration Agreement and that she knew she was signing it in connection with her employment. Id. at 4-5. Cullen's deadline to respond to Hall's discovery requests was September 8.[1] Fed. R. Civ. P. 36(a)(3) (allowing thirty days). Cullen delayed responding until September 17. Pl.'s Objs. Resps. Def.'s Second Disc. Req. ("Pl.'s Resps.") (ECF No. 26-2, at 6). In her late responses, Plaintiff objected on the grounds that certain documents were not attached and also denied that she electronically signed the Arbitration Agreement or knew she was doing so in connection with her employment. Id. at 3-4.

---

[1] The parties consented to electronic service, which provided an additional three days to respond under Federal Rule of Civil Procedure 6(d). Pl.'s Opp'n (ECF No. 27, at 1-2). Defendant also cites Local Rule 26(C), which requires objections to be served within fifteen days, for a deadline of August 23, 2021. Def.'s Mem. (ECF No. 26, at 2). Under either deadline, however, parties agree that Plaintiff's responses were late.

### C. Second Motion to Compel Arbitration

On October 8, 2021, Hall moved again to compel arbitration and stay proceedings in this Court. (ECF No. 25). Hall based its motion partly on Cullen's late responses to its discovery requests, which Defendant argued constituted admissions by operation of the Federal Rules of Civil Procedure. Def.'s Mem. (ECF No. 26, at 4-5). Plaintiff opposed the Motion and asked that the Court issue an order finding that Cullen had timely disputed Defendant's requests for admission or otherwise could withdraw the "deemed admissions" resulting from the missed deadline. (ECF No. 27). Defendant replied, ("Def.'s Reply") (ECF No. 28), and on October 29, the parties jointly moved for an extension of time for discovery and leave to submit additional briefing, (ECF No. 29), which the Court granted, (ECF No. 30). Among the additional discovery taken, the parties deposed Cullen and certain Defendant representatives on the issue of consent to arbitration. Cullen Dep. (ECF No. 32-4); Mossanen Dep. (ECF No. 32-3).

In accordance with the Court's order, Cullen submitted a sur reply on November 15 opposing the Motion, ("Pl.'s Sur Reply") (ECF No. 32), and Defendant replied, ("Def.'s Reply Resp.") (ECF No. 33). Hall requested that the Motion be decided without a hearing, (ECF No. 31, at 1), and Cullen has not requested one.

### II. RECOMMENDED FINDINGS OF FACT

Hall is a Honda dealership located in Virginia Beach, Virginia. Pl.'s Resps. (ECF No. 26-2, at 2); Crozier Decl. ¶ 3 (ECF No. 26-3, at 1). On December 27, 2017, Cullen applied for employment with Hall. Pl.'s Resps. (ECF No. 26-2, at 2). Her application for employment did not identify Hall specifically, but referred to a corporate parent identifier "MileOne Automotive" in the body of the form. Def.'s Mem. Ex. 1 (ECF No. 26-1, at 8). She was hired effective January 3, 2018. Id. at 3.

3

A. **Plaintiff's Signature on the Arbitration Agreement**

On January 9, 2018, Plaintiff completed electronic documents in connection with employment onboarding. Crozier Decl. ¶ 6, Ex. A-B (ECF No. 26-3, at 1, 3-4). At the time, Hall required all newly hired employees to sign five documents. Mossanen Dep. 26:21-27:9 (ECF No. 32-3). All the documents related to Cullen's employment, but none of them identify Hall specifically,[2] instead referring generally to the employer/employee relationship. Id. (including forms on women's health and cancer rights, marketplace rights, wage deduction, employee handbook receipt, and the Arbitration Agreement). Among these documents, the employee handbook receipt form, as well as the employee handbook itself, reference MileOne. Pl.'s Sur Reply Ex. G (ECF No. 32-7, at 9, 18). The programing within Hall's electronic "WorkDay" system required all five documents to be completed at the same time. Mossanen Dep. 28:10-29:1 (ECF No. 32-3). For each of these five documents, WorkDay recorded Cullen's electronic signature on January 9 and provided a timestamp ("04:24:59 PM").[3] See Crozier Decl. Ex. A (ECF No. 26-3, at 3). A "signature statement" accompanied each e-signature that read, "By clicking on this box you agree to the terms and conditions outlined by this agreement. This is a legal and binding agreement." Id.

Cullen declares that she has "no recollection whatsoever of signing, endorsing, or otherwise consenting to an arbitration agreement at any point during [her] tenure with Hall

---

[2] To the extent these documents appear in the record. See Def.'s Mem. Ex. 1 (ECF No. 26-1, at 16-18) (women's health and cancer rights) (failing to reference any employer); Pl.'s Sur Reply Ex. G (ECF No. 32-7, at 14-19) (employee handbook receipt) (reciting that acknowledgment is "a condition of my employment with MileOne Automotive and their respective subsidiaries").

[3] Although the timestamp is identical for each document, Cullen completed the documents "individually, so they shouldn't have been the same." Cullen Dep. 47:7-9 (ECF No. 32-4). For each, Cullen "indicated that [she] reviewed it and accepted it[.]" Id. 47:10-21. Corporate testimony clarified that after review, all documents were submitted within WorkDay simultaneously. Mossanen Dep. 28:10-29:1 (ECF No. 32-3).

4

Automotive." Cullen Decl. ¶ 2 (ECF No. 14-1, at 1). However, Cullen recalls signing two of the five electronic employment documents required during employment onboarding. Cullen Dep. 39:18-24 (ECF No. 32-4) (women's health and cancer rights); id. 41:24-43:7 (wage deduction). Cullen testified at her deposition that she did not remember signing the Arbitration Agreement. Id. 44:1-14, 46:23-47:14. Cullen never stated that she did not sign the Arbitration Agreement, only that she did remember doing so. See, e.g., id. 44:11-12 ("I do not remember signing an arbitration agreement or seeing this document.").

**B.     The Arbitration Agreement**

The Arbitration Agreement is titled "Arbitration Agreement." Crozier Decl. Ex. B (ECF No. 26-3, at 4). An image with the words "Mile One Automotive" appears in the top left-hand corner of the Arbitration Agreement. Id. In the first line, the Arbitration Agreement defines "MileOne" as "The Company" and provides a blank space for "Employee." Id. The Arbitration Agreement thereafter refers only to "The Company," "Employee," and "The Parties." Id. In the opening line of the Arbitration Agreement, it states that the signors "mutually agree that any and all claims or controversies arising out of or relating to the Employee's employment, the termination thereof, or otherwise arising between Employee and The Company shall, in lieu of a jury or other civil trial, be settled by final and binding arbitration." Id. The Arbitration Agreement specifies that this "includes all claims between the Employee and The Company including, by way of example and without limitation, claims of: . . . violation of the Family and Medical Leave Act . . . or violation of any other law, statute, regulation or ordinance governing employment." Id.

**C.     Hall and MileOne**

MileOne is a trademark "owned by Atlantic Automotive Corp., which permits its affiliated entities to utilize the trademark for business purposes." Def.'s Objs. Resps. Pl.'s Second Interrog.

5

("Def.'s Resps.") (ECF No. 32-1, at 5); see also Mossanen Dep. 8:14-17 (ECF No. 32-3). Atlantic Automotive Corp. owns a minority percentage of Hall's membership interest. Def.'s Supp. Resps. Pl.'s Second Interrog. ("Def.'s Supp. Resps.") (ECF No. 32-6, at 1-2). Cullen testified that during her employment, "MileOne" was printed on t-shirts and placed on signs around the building. Cullen Dep. 16:20-22, 40:16-41:21 (ECF No. 32-4). She testified that she did not know what MileOne was. Id. 18:25-19:3.

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "reflects the overarching principle that arbitration is a matter of contract." Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013). It is a congressional command that courts "rigorously enforce" arbitration agreements. Id. (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)). The FAA explicitly provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract." 9 U.S.C. § 2. State law contract defenses that do not "rely on the uniqueness of an agreement to arbitrate" may still prevent enforcement of the agreement to arbitrate. Dillon v. BMO Harris Bank, N.A., 856 F.3d 330, 334 (4th Cir. 2017) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341 (2011)).

Under the FAA, if the arbitration agreement is binding and therefore "referable to arbitration under an agreement in writing for such arbitration," the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. When one party refuses to arbitrate in accordance with a binding agreement, the court must enter an order "directing that such arbitration proceed in the manner provided for in such agreement." Id. § 4. These provisions "call for an expeditious and summary hearing, with only restricted inquiry into factual issues." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460

U.S. 1, 22 (1983). Specifically, this court's contract interpretation function encompasses the initial inquiry into whether the parties agreed to arbitrate the particular arbitrability questions raised. See Peabody Holding Co. v. United Mine Workers of Am., 665 F.3d 96, 101 (4th Cir. 2012); see also Misubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). The court thus decides "certain gateway matters, such as whether the parties have a valid arbitration agreement at all . . . ." Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003).

## IV. ANALYSIS

"The question of whether a valid arbitration agreement has been formed is governed by state law." Roddick v. Marsh & McLennan, 983 F.2d 1057, 1993 WL 1010, at *2 (4th Cir. 1993) (unpublished table opinion). As the Arbitration Agreement was executed in Virginia, Crozier Decl. ¶¶ 3, 6 (ECF No. 26-3, at 1), Virginia law applies here, Roddick, 1993 WL 1010, at *2. Virginia follows the common law, requiring "mutuality of assent" for contract formation. Phillips v. Mazyck, 643 S.E.2d 172, 175 (Va. 2007) (quoting Lacey v. Cardwell, 217 S.E.2d 835, 843 (Va. 1975)); see also id. (quoting Routh v. Snap-On Tools Corp., 423 S.E.2d 791, 794 (N.C. Ct. App. 1992) ("[T]he party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes."). The Arbitration Agreement, which is aptly titled "Arbitration Agreement," clearly requires arbitration of "all claims or controversies arising out of or relating to the Employee's employment," including violations of the FMLA. Crozier Decl. Ex. B (ECF No. 26-3, at 4). Because the parties do not dispute that the Arbitration Agreement encompasses Plaintiff's claims, the only question facing the Court is whether the parties mutually agreed to its terms. See Peabody Holding Co., 665 F.3d at 101.

After considering the record, I find that the undisputed facts establish that Plaintiff agreed to arbitrate her dispute with Hall as her employer. For this finding, I rely on the undisputed factual

7

record and not on Plaintiff's admissions by operation of the Federal Rules of Civil Procedure. This Report thus RECOMMENDS GRANTING Defendant's Second Motion to Compel Arbitration and Stay Proceedings (ECF No. 25).

### A. Plaintiff's Late Responses to Defendant's Request for Admissions Should Be Deemed Timely Under Federal Rule of Civil Procedure 36(b).

In its motion to compel arbitration and subsequent briefing, Defendant relies in part on Plaintiff's late responses to its requests for admission. Defendant argues that Cullen has "admitted to key facts which, when considered with other undisputed evidence, conclusively establish that Plaintiff executed an agreement to arbitrate claims related to and arising from her employment with Hall." Def.'s Mem. (ECF No. 26, at 1); see also Def.'s Reqs. (ECF No. 26-1, at 4-5). Because Plaintiff delayed responding until September 17, concededly after the deadline, Defendant's requests were admitted. Pl.'s Opp'n (ECF No. 27, at 2). Plaintiff moved this court to set aside her admissions,[4] asking that her responses be deemed timely, or alternatively, that her admissions be withdrawn. Id. at 5-8; Pl.'s Sur Reply (ECF No. 32, at 5-8). This relief is appropriate.

The Federal Rules operate to establish that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ.

---

[4] Defendant argues that Plaintiff's motion was improper under Local Rule 7(F), which requires that all motions "be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies." Def.'s Reply Resp. (ECF No. 33, at 1-2). But the Local Rule is subject to the caveat that the briefing requirements may be modified by the court. And Plaintiff has cited authority demonstrating that the court has discretion to consider non-compliant motions. See Bluemark, Inc. v. Geeks on Call Holdings, Inc., No. 2:09cv322, 2010 WL 28720, at *2 (E.D. Va. Jan. 5, 2010) (exercising discretion and reviewing the motion "[d]espite the[] obvious deficiencies," including filing a late brief). As Defendant argues, this district has sometimes declined to exercise such discretion. Def.'s Reply Resp. (ECF No. 33, at 2) (citing Littlestone, LC v. Chauvin, No. 3:19cv514, 2019 WL 4722436, at *3 n.9 (E.D. Va. Sept. 26, 2019)). However, for the same reasons I recommend allowing Plaintiff to withdraw her admissions, I consider Plaintiff's motion, despite her incorporated briefing. As Plaintiff did not formally move this Court to withdraw her admissions, there is no accompanying disposition to recommend.

P. 36(a)(3) (emphasis added). The court cannot "disregard" such an admission, <u>Adventis, Inc. v. Consol. Prop. Holdings, Inc.</u>, 124 F. App'x 169, 173 (4th Cir. 2005), "unless the court, on motion, permits the admission to be withdrawn or amended," Fed. R. Civ. P. 36(b). "Once made, an admission may be withdrawn only if: a) the withdrawal would promote the presentation of the merits of the action, and b) allowing the withdrawal would not prejudice the party that obtained the admission." <u>Adventis</u>, 124 F. App'x at 173 (citing <u>id.</u>; <u>Am. Auto Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.</u>, 930 F.2d 1117, 1119 (5th Cir. 1991)). Granting Plaintiff's motion both promotes a merits-based decision and causes Hall no discernable prejudice.

First, allowing Cullen to withdraw her admissions "promote[s] the presentation of the merits" of this action. <u>Adventis</u>, 124 F. App'x at 173. This prong is satisfied when "the deemed admissions effectively resolve the case and thus upholding the admissions would eliminate any need for a presentation on the merits." <u>Precision Franchising, LLC v. Gatej</u>, No. 1:12CV158, 2012 WL 6161223, at *6 (E.D. Va. Dec. 11, 2012). Recognizing the admissions here would certainly eliminate the dispute over arbitrability, but it would do so based on the missed deadline—not on the merits. Furthermore, <u>after the missed deadline</u>, both parties conducted extensive discovery on this question, including deposing Cullen, (ECF No. 32-4), and Hall's corporate representative Ghoncheh Mossanen ("Mossanen"), (ECF No. 32-3), as well as exchanging further written discovery responses, <u>see, e.g.</u>, Pl.'s Resps. (ECF No. 26-2); Def.'s Resps. (ECF No. 32-1); Def.'s Supp. Resps. (ECF No. 32-6, at 1). The Court also extended the deadline for discovery on this issue in November, months after Plaintiff's late response. (ECF No. 30). The court must remember that its "truth-finding function . . . is of paramount importance," and be "reluctant to allow the rigid operation of procedural rules to supplant merits-based dispositions." <u>Acosta v. Mezcal, Inc.</u>, No. JKB-17-0931, 2018 WL 4188448, at *3 (D. Md. Aug. 31, 2018). The record

contains sufficient evidence to recommend a merits-based decision, and thus I am reluctant to elevate form in these circumstances.

Second, there is little danger of prejudice to Defendant as "the party that obtained the admission." Adventis, 124 F. App'x at 173 (citing Fed. R. Civ. P. 36(b)). Hall argues that "[g]ranting Plaintiff's motion would be inherently prejudicial to the Defendant," and that Cullen's admissions "significantly simplify the arbitrability dispute" and prevent "unnecessarily embroil[ing] the Court and the Parties in an exercise of resolving factual issues which are already deemed admitted." Def.'s Opp'n (ECF No. 28, at 4-5). This is not prejudice. Prejudice, Black's Law Dictionary (11th ed. 2019) ("Damage or detriment to one's legal rights or claims."). The following factors indicate whether a withdrawal causes prejudice to the relying party:

> a number of months had passed after the deadline to respond to requests for admissions; it was near or after the close of discovery; the relying party had foregone some discovery based on the admissions; the opposing party repeatedly had failed to respond to discovery requests or communications; and / or the opposing party had received some notice from the relying party or the court of the consequences of failing to respond to discovery requests.

Precision Franchising, 2012 WL 6161223, at *7. None of these factors weigh against granting relief in these circumstances.

Although Plaintiff was late in responding to Hall's requests for admission, she was only late by a matter of days. Pl.'s Opp'n (ECF No. 27, at 1-2) (arguing that she was "a mere nine days" late). As Cullen also explains in her motion, her delayed response arose at least partially from her counsel's COVID-19 diagnosis.[5] Id. at 4-5. Courts may consider such a contributing factor. See Nguyen v. CNA Corp., 44 F.3d 234, 243 (4th Cir. 1995) (finding district court did not

---

[5] Plaintiff's counsel was "quarantined and without office access until September 8, 2021 . . . ." Pl.'s Opp'n (ECF No. 27, at 5). Defendant's counsel was not made aware of the COVID-19 diagnosis. Id. at 4-5; Def.'s Reply (ECF No. 28, at 6).

10

abuse its discretion when "the late response was so minimal in time and work on the date for responding was slowed by [a] snow storm"). The parties also conducted a large portion of their discovery after Plaintiff filed her responses on September 17—for example, Mossanen was deposed on October 26, (ECF No. 32-3), Cullen was deposed on October 27, (ECF No. 32-4), and this Court extended the discovery deadline on this issue to November 5, (ECF No. 30). As parties were also allowed additional briefing on this issue, id., I am not aware of any discovery or argument Hall has foregone because of its reliance on Plaintiff's admissions.

Furthermore, Hall was aware of Cullen's position before sending its requests for admission asking her to concede the issue. On June 16, 2021, in response to Hall's first Motion to Compel Arbitration, Cullen declared that she lacked any "recollection whatsoever of signing, endorsing, or otherwise consenting to an arbitration agreement" with Hall. Cullen Decl. ¶ 2 (ECF No. 14-1, at 1). And yet, on August 6—almost two months later—Hall requested Plaintiff's admission that she electronically signed the Arbitration Agreement. Def.'s Reqs. (ECF No. 26-1, at 4). Hall cannot have been surprised by Cullen's eventual response, which was nearly identical to her previously filed declaration. See Pl.'s Resps. (ECF No. 26-2, at 3-4). Therefore, allowing Plaintiff to withdraw her "deemed admissions," and accepting Plaintiff's responses as timely, complies with Rule 36(b) and is an appropriate exercise of the Court's discretion.

### B. The Arbitration Agreement Is Enforceable Because the Undisputed Facts Show That Plaintiff and Defendant Mutually Consented to It.

Motions to compel arbitration are evaluated similarly to motions for summary judgment. Denver Glob. Prods. v. Leon, 815 F. App'x 714, 719 n.6 (4th Cir. 2020); Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015). When an arbitration agreement contains provisions that encompass the relevant claims, the burden shifts to the party opposing arbitration to "make an unequivocal denial that an arbitration agreement exists" and to "show

11

sufficient facts in support." Chorley Enters., 807 F.3d at 564 (citing Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)). Here, there is no doubt the Arbitration Agreement encompasses Cullen's claims. Plaintiff attempts to creates a material dispute about whether the Arbitration Agreement is binding by (1) casting doubt on whether she signed the Arbitration Agreement; and (2) arguing that because the Arbitration Agreement names "MileOne" and not Hall as her employer, Defendant lacks standing to enforce the Arbitration Agreement. Pl.'s Sur Reply (ECF No. 32, at 3). Defendant argues that the undisputed facts establish that Plaintiff signed the Arbitration Agreement with Hall as her employer. Def.'s Reply Resp. (ECF No. 33, at 1). I agree that the parties mutually agreed to arbitrate, and that Hall, as Cullen's employer, has standing to enforce the Arbitration Agreement.

   **1. The Arbitration Agreement Is Enforceable Against Cullen Because She Consented to It.**

The undisputed facts establish that Plaintiff signed the Arbitration Agreement on January 9, 2018, when she initially onboarded with Hall. Crozier Decl. ¶ 6 (ECF No. 26-3, at 1). At that time, Hall required all new employees to electronically sign five documents when they were hired. Mossanen Dep. 26:21-27:9 (ECF No. 32-3). The WorkDay system recorded Cullen's electronic review and signature of all five documents on January 9, 2018, as well as a timestamp for when they were signed. See Crozier Decl. Ex. A (ECF No. 26-3, at 3). Further, Cullen recalled in her deposition electronically signing her onboarding documents. She specifically identified at least two of these five documents: at her deposition, she "definitely remember[ed]" signing a form about women's health, Cullen Dep. 39:18-24 (ECF No. 32-4), and she "recognize[d]" a form about wage deduction, id. 41:24-43:7. The system's programming prevented any of these documents from being completed individually. Mossanen Dep. 28:10-29:1 (ECF No. 32-3). These undisputed facts support a finding that Cullen signed the Arbitration Agreement.

12

In contrast, Plaintiff has only declared that she does not <u>remember</u> signing the Arbitration Agreement, not that she <u>did not</u> sign it. See, e.g., Cullen Decl. ¶ 2 (ECF No. 14-1, at 1). Courts have refused to enforce arbitration agreements when plaintiffs disputed signing them. See, e.g., <u>Davis v. Young & Assocs., Inc.</u>, No. 1:20CV00061, 2021 WL 4191384, at *5 (W.D. Va. Sept. 15, 2021) (noting that plaintiff "specifically denies that she signed the document"); <u>Mansour v. Kmart Corp., Inc.</u>, No. PWG-17-2440, 2018 WL 3575062, at *3 (D. Md. July 25, 2018) (including, among others, a statement "in a supporting declaration that she 'did not complete any arbitration forms'"). But Cullen does not dispute signing the Arbitration Agreement, and her failure to remember signing the Arbitration Agreement does not create a material dispute sufficient to defeat arbitration. Cf. <u>Motiva Enters. LLC v. W.F. Shuck Petro.</u>, No. 3:10-cv-793, 2012 WL 601245, *14 (D. Conn. Feb. 22, 2012) ("Courts have not allowed parties to avoid summary judgment on the basis of their claims not to remember signing a document or not to recognize the signature on a document." (citing cases)). At no point has Cullen unequivocally denied signing the Arbitration Agreement.[6] See <u>Chorley Enters.</u>, 807 F.3d at 564 (requiring "an unequivocal denial that an arbitration agreement exists"). Therefore, the undisputed evidence establishes that Cullen signed the Arbitration Agreement.

### 2. Hall Can Enforce the Arbitration Agreement Against Cullen Because Hall Is a Signatory to the Arbitration Agreement.

In addition to claiming that she has no memory of signing the Arbitration Agreement, Plaintiff also attempts to cast doubt on Hall's role as the other party to the Arbitration Agreement.

---

[6] In fact, this argument receives less attention in later briefing. In her Sur Reply, Plaintiff argues that "there is <u>no factual dispute</u> that the only signatories to the Arbitration Agreement <u>are Cullen</u> and a trademark." Pl.'s Sur Reply (ECF No. 32, at 8) (emphasis added). Although this argument does not admit that Plaintiff signed the Arbitration Agreement, it is worth observing that she does not rest her opposition to arbitration on this alleged dispute of fact.

Because the Arbitration Agreement displays the corporate moniker "MileOne" (and not Hall), Plaintiff argues that Defendant lacks standing to enforce it. Pl.'s Opp'n (ECF No. 27, at 9). "Generally, one who is not a party to an arbitration award lacks standing to compel arbitration." Collie v. Wehr Dissolution Corp., 345 F. Supp. 2d 555, 561 (M.D.N.C. 2004); see also Davis, 2021 WL 4191384, at *5 (discussing Virginia law extending some non-signatories standing). However, Defendant argues that Cullen's employer Hall—not MileOne—is the other party to the Arbitration Agreement. Def.'s Reply Resp. (ECF No. 33, at 3). Specifically, "Plaintiff understood that she was executing an agreement with her employer," id., and as such, she "fully understood the meaning of the term 'MileOne' as used in the Arbitration Agreement when she signed it," id. at 5. Because Cullen executed the Arbitration Agreement with her employer, and Hall is undisputedly her employer, the Arbitration Agreement is enforceable.

> i. **Hall Is Identified with Reasonable Certainty as the Other Signatory to the Arbitration Agreement by the Context and Content of the Arbitration Agreement.**

The language of the Arbitration Agreement and the context surrounding its signing clearly establish that Cullen executed the Arbitration Agreement with Hall as her employer. Under Virginia law, parties to a contract must be identified with reasonable certainty:

> While there does not appear to be a Virginia Supreme Court case holding that the parties to a contract need not be specifically named in a contract as long as they can be identified with reasonable certainty, that Court has held that a "contract is not valid and it is unenforceable if the terms of the contract are not established with reasonable certainty." Accordingly, the court agrees with the holding of the Fourth Circuit that, "while the parties to an agreement need not be named formally, there can be no enforceable agreement unless they can be identified with reasonable certainty."

Fries v. Myers & Fitness Int'l, LLC, 106 Va. Cir. 335, 339 (Va. Cir. Ct. 2020) (first quoting Dodge v. Trs. of Randolph-Macon Woman's Coll., 661 S.E.2d 801, 803 (Va. 2008); and then quoting Arrants v. Buck, 130 F.3d 636, 642 (4th Cir. 1997)) (cleaned up). Because the Arbitration

Agreement unambiguously addresses arbitration of employment disputes, Virginia law, as applied in this case, requires only that it identify the other signatory with reasonable certainty as Cullen's employer—which it does.

First, the language of the Arbitration Agreement plainly indicates that the other party was Cullen's employer. The Arbitration Agreement is clearly intended for completion between an employer and an employee, referring throughout to "The Company" and the "Employee" as parties. Crozier Decl. Ex. B (ECF No. 26-3, at 4). The Arbitration Agreement contains terms explicitly geared toward employment, including that the signors agreed to arbitrate "claims or controversies arising out of or relating to the Employee's employment," and defining the FLSA and other employment law as encompassed within the Arbitration Agreement. Id. Any reasonable person would understand that this language, which is contained within the four corners of the Arbitration Agreement, refers to a specific employment relationship. Because Cullen knew Hall was her employer,[7] Cullen Dep. 25:16-18, 56:2-5 (ECF No. 32-4), the Arbitration Agreement itself indicates that only Hall could have been the other signatory.

Second, "the circumstances under which Plaintiff signed" indicate that Cullen "understood she was executing the Arbitration Agreement as a condition of her employment with Defendant" and that Hall was the other signatory. Def.'s Reply Resp. (ECF No. 33, at 8). Plaintiff completed employment paperwork—including the Arbitration Agreement—on January 9, 2018, Crozier

---

[7] Both parties further muddy the waters by debating the exact name of the entity employing Cullen. See, e.g., Pl.'s Sur Reply (ECF No. 32, at 14) ("Plaintiff's IRS Form W-2 identifies Hall Automotive as her employer, . . . [but] Defendant contended in its Answer that Plaintiff was employed by Hall of Virginia Beach, LLC d/b/a Hall Honda"); cf. Def.'s Reply Resp. (ECF No. 33, at 5) (arguing that "[a]t this point, the legal relationships between entities is clear"). This debate is irrelevant because the Arbitration Agreement identifies Cullen's employer as the other signatory, and Cullen is litigating here against Defendant as her employer. Compl. ¶¶ 57, 66 (ECF No. 1, at 10) ("Hall was an 'employer' within the meaning of the FMLA"). The underlying FMLA action alleged makes obfuscation about her employer's exact corporate identity beyond the scope of the arbitrability issue.

Decl. ¶ 6, Ex. A (ECF No. 26-3, at 2, 3), less than a week after starting her employment with Hall, Pl.'s Resps. (ECF No. 26-2, at 3). She signed the Arbitration Agreement concurrently with four other employment documents, Crozier Decl. Ex. A (ECF No. 26-3, at 3), two of which she conceded that she recognized, Cullen Dep. 39:18-24, 41:24-43:7 (ECF No. 32-4). The substance of these documents was clearly relevant to Cullen's employment, see Mossanen Dep. 26:21-24 (ECF No. 32-3) (listing topics), and she was instructed during her employment to complete them, Cullen Dep. 43:12-17 (ECF No. 32-4). The term MileOne is also not used only on the Arbitration Agreement. It appears on other employment-related paperwork that Cullen completed, including her application, Def.'s Mem. Ex. 1 (ECF No. 26-1, at 8), and the employee handbook receipt form, Pl.'s Sur Reply Ex. G (ECF No. 32-7, at 14). These facts clarify that Cullen executed the Arbitration Agreement with her employer, Hall.

Plaintiff has attempted to make the relationship between Hall and MileOne central to this dispute. E.g., Pl.'s Sur Reply (ECF No. 32, at 1). She characterizes the Arbitration Agreement as one to which "the only signatories . . . are Cullen and a trademark," id. at 8, and argues that "Defendant has not presented a recognized legal theory that would permit it to enforce the Arbitration Agreement as a non-signatory," id. at 11 n.6 (emphasis added). However, this mischaracterizes Defendant's role in the Arbitration Agreement. Hall is not enforcing the Arbitration Agreement as a third-party beneficiary, and it does not argue that the Arbitration Agreement is between Cullen and an authorized trademark—instead, Hall is a party. Def.'s Reply Resp. (ECF No. 33, at 3) ("Defendant has never contended that it is a third-party beneficiary of the Arbitration Agreement; Defendant is a party to the Arbitration Agreement." (emphasis in original)). Therefore, there is no need to explore whether MileOne was used broadly elsewhere as "a proxy for Cullen's employer" or even whether Defendant had authorization to use the MileOne

16

trademark.[8] Pl.'s Sur Reply (ECF No. 32, at 9). The Court merely asks whether the Arbitration Agreement's content and context establish that the other signatory to Cullen's employment arbitration agreement was necessarily Cullen's employer. Because the undisputed evidence establishes that the Arbitration Agreement was between Cullen and her employer, Hall (as her employer) can enforce it.

### ii. Cullen Was Not Required to Understand MileOne Generally When She Signed the Arbitration Agreement.

Enforcement does not require that Plaintiff understood what MileOne referenced generally at the time she signed the Arbitration Agreement. Hall has cited evidence that Cullen understood MileOne while working at the dealership, Def.'s Reply Resp. (ECF No. 33, at 6), including that she saw t-shirts and signs displaying the term, Cullen Dep. 16:20-22, 40:16-41:21 (ECF No. 32-4). Plaintiff argues that "while she periodically saw the term 'MileOne' used during her employment with Defendant, she was never aware of the meaning or nature of that term as it related to Defendant's business." Pl.'s Sur Reply (ECF No. 32, at 9); see also id. (arguing that it was "factually inaccurate" that Cullen knew MileOne referred to Hall). She also argues that even if she understood that MileOne was associated with Defendant, she learned this only after signing the Arbitration Agreement. Id. Lastly, Plaintiff implies that Hall's corporate representative, Mossanen, does not understand the relationship between Hall, Atlantic, and MileOne,[9] and thus Cullen could not have done so either. Id. at 1. Therefore, the parties genuinely dispute the extent

---

[8] Plaintiff implies that Hall is not authorized to use the MileOne trademark. Pl.'s Sur Reply (ECF No. 32, at 10-11). Defendant has produced additional documentation to demonstrate that "the legal relationship between the entities is clear, and . . . Defendant was authorized to utilize the term 'MileOne' to identify itself in the Arbitration Agreement." Def.'s Reply Resp. (ECF No. 33, at 5). This dispute is not material.

[9] Defendant argues that Mossanen understood MileOne. Def.'s Reply Resp. (ECF No. 33, at 4). However, Mossanen's understanding of MileOne is irrelevant to this dispute because the only question presented here is whether the Arbitration Agreement establishes Cullen's employer as the other party.

of Cullen's knowledge of the term MileOne, and how it was used to promote the dealerships operating under the Hall umbrella.

This dispute—while genuine—is simply not material to this recommendation. The Fourth Circuit has held that "an agreement to arbitrate cannot be defeated by one party's assertion that it did not know the precise identity of the party with whom it contracted." Habitat Architectural Grp., P.A. v. Cap. Lodging Corp., 28 F. App'x 242, 245 (4th Cir. 2002) (applying North Carolina law). Virginia has excused formal naming if the party "can be identified with reasonable certainty." Fries, 106 Va. Cir. at 339 (quoting Arrants, 130 F.3d at 642). In fact, very few corporations would be able to enforce their contracts if signatories needed to fully comprehend their corporate structure. And arbitration agreements, even more than ordinary contracts, should be "rigorously enforce[d.]" Am. Express, 570 U.S. at 233 (quoting Dean Witter, 470 U.S. at 221). As such, Cullen did not need to understand who "owned" MileOne, how it was used to promote the dealership, or anything beyond how the term operated within the Arbitration Agreement itself. The undisputed facts, as explained above, establish that within the Arbitration Agreement, MileOne was a generic descriptor for The Company that was the other party. That other party—whether described as MileOne or The Company—unambiguously referenced Cullen's employer, and Cullen knew she was signing the Arbitration Agreement as a condition of her employment. Therefore, Cullen must arbitrate her claims, even if the Court accepts as true her assertion that she is "not even sure to this day what actually MileOne is." Cullen Dep. 82:4-5 (ECF No. 32-4).

## V. **RECOMMENDATION**

For the foregoing reasons, this Report RECOMMENDS that the district court GRANT Defendant's Second Motion to Compel Arbitration and Stay Proceedings (ECF No. 25).

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

January 7, 2022